ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| FIDEICOMISO PARA LOS CONDOMINIOS DE LA CIUDADELA Y OTROS<br><br>Apelados<br><br>v.<br><br>FIDEICOMISO SALIM M. MERHEB BISTANI Y OTROS<br><br>Apelantes | KLAN202200225 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2021CV07591<br><br>Sobre: Arrendamiento de Servicio |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rodríguez Casillas y la Jueza Martínez Cordero[1].

*Martínez Cordero, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de septiembre de 2023.

Comparece el Fideicomiso Salim M. Merheb Bistani, Salim Merheb Bistani y Mariem Bistani Rodríguez (en adelante, parte apelante) para solicitarnos la revisión de la *Sentencia* emitida el 7 de febrero de 2022, notificada el 8 de febrero de 2022, por el Tribunal de Primera Instancia, Sala de San Juan (en adelante, TPI), mediante la cual declaró Ha Lugar una Demanda de *Injunction* y, en consecuencia, ordenó a la parte apelante a restituir la fachada del apartamento en controversia, a su estado original.[2]

I

El 17 de noviembre de 2021, el Fideicomiso para los Condominios de la Ciudadela, Putnam LAC Holding LLC (en adelante, Fideicomiso) presentó una *Demanda* de interdicto al

---

[1] Véase, Orden Administrativa OATA-2023-001 del 9 de enero de 2023, en la que se asigna el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución del Hon. Carlos I. Candelaria Rosa, y la Orden Administrativa OATA-2023-036 del 28 de febrero de 2023, en la que se modifica la composición del panel, ya que la Hon. Gina R. Méndez Miró dejó de ejercer funciones como Jueza del Tribunal de Apelaciones.
[2] Apéndice de la parte apelante, a las págs. 1-10.

amparo de las disposiciones del Código de Enjuiciamiento Civil[3], Regla 57 de las de Procedimiento Civil[4] y la Ley de Condominios de Puerto Rico[5], contra los demandados del título.[6] El Fideicomiso alegó que, para el mes de julio de 2019, la parte apelante, a través de la compañía Putnam Lac Holding, les solicitó un endoso para realizar un cambio de fachada al balcón del condominio en donde residía. En específico, el cambio en la fachada consistía en cerrar con ventanas de cristal el balcón del apartamento 1521 de la Torre Antosanti 1500 de La Ciudadela.

Arguyó que, el 29 de agosto de 2019, expidieron un endoso favorable el cual estaba condicionado al cumplimiento de los siguientes requisitos: (1) la construcción a realizarse deberá recibir la aprobación unánime de los quince (15) edificios de La Ciudadela y el Titular de Plaza de la Ciudadela, Putnam LAC Holding, LLC y contar con la aprobación escrita del Titular Registral de la Unidad; (2) la construcción a realizarse no podía apartarse de lo representado en el dibujo esquemático y, de así hacerlo, tenía que ser restablecida a su estado original de inmediato; (3) de requerirlo, la construcción a realizarse debía contar con todos los endosos y permisos gubernamentales necesarios, así como cumplir con los requisitos reglamentarios impuestos para obras de construcción y remodelación tanto por La Ciudadela como por la Torre 1500.

Así las cosas, esbozó que, para principios de abril de 2021, el señor Salim Merheb realizó el cambio de la fachada. A esos efectos, el 6 de abril de 2021, el Fideicomiso remitió un comunicado al señor Salim Merheb e indicó que conforme al Artículo 10 de la Escritura 324 de Ratificación de Derecho de Superficie de La Ciudadela procedía devolver el balcón a su estado original. Sostuvo que el 26

---

[3] 32 LPRA sec. 3421, *et seq.*
[4] 32 LPRA Ap. V, R. 57.
[5] 31 LPRA sec. 1921, *et seq.*
[6] Apéndice de la parte apelante, a las págs. 29-53.

de abril de 2021, el Fideicomiso votó mayoritariamente y, denegó el cambio de dicha fachada. En virtud de lo anterior, el Fideicomiso envió un comunicado al señor Salim Merheb y expresó que el cierre del balcón e instalación de ventanas se realizó sin la autorización requerida. Por todo lo anterior, solicitó que se dictase una orden a los fines de declarar la ilegalidad del cambio de la fachada.

De ahí, el 9 de diciembre de 2021, el codemandado Fideicomiso Salim Merheb Bistani ("Fideicomiso SMB") presentó una *Moción de Desestimación.*[7] Por su parte, en la misma fecha en que se presentó la *Moción de Desestimación,* el apelante Salim Merheb Bistani ("Fideicomiso SMB") presentó una *Moción Uniéndonos a Moción de Desestimación del Fideicomismo Salim Merheb Bistani.*[8] De igual forma, ocurrió con la apelante Mariem Bistani Rodríguez, quien presentó también una *Moción Uniéndonos a Moción de Desestimación del Fideicomiso Salim Merheb Bistani.*[9] En la *Moción de Desestimación,* expuso que no procedía la concesión de un interdicto preliminar arguyendo que el daño irreparable alegado se podía subsanar mediante la remoción de las ventanas objeto de la controversia.

En respuesta, el 22 de diciembre de 2021, el Fideicomiso presentó una *Moción en Cumplimiento de Orden.*[10] Sobre el particular, el foro primario emitió una *Orden,* mediante la cual señaló vista mediante videoconferencia, para el 25 de enero de 2022.[11]

Así las cosas, el 28 de enero de 2022, se celebró la vista de interdicto preliminar y permanente[12]. El foro primario recibió prueba testimonial y documental.

---

[7] *Id.,* a las págs. 54-59.
[8] *Id.,* a las págs. 60-61.
[9] *Id.,* a las págs. 62-64.
[10] *Id.,* a las págs. 65-69.
[11] *Id.,* a la pág. 70.
[12] *Id.,* a las págs. 71-75.

Producto de la vista celebrada, el foro primario emitió la *Sentencia* apelada. Mediante su *Sentencia*, el tribunal *a quo* declaró Ha Lugar la solicitud de interdicto y ordenó a la parte apelante a restituir la fachada del apartamento en controversia a su estado original.[13] De la Sentencia apelada surge, además, que, producto de la vista, el TPI consignó once (11) determinaciones de hechos, así como que incluyó las correspondientes conclusiones de derecho.[14] Los once (11) determinaciones de hechos fueron las siguientes:

1. La parte demandante, el Fideicomiso para los Condominios de la Ciudadela, es el organismo que por disposición de las escrituras 324 sobre Ratificación de Concesión de Derecho y 325 sobre Constitución de Fideicomiso para los Condominios de Ciudadela, tiene la autoridad necesaria para la presentación del presente recurso representando el colectivo de los propietarios y Consejos de Titulares de las 15 Torres residenciales del proyecto conocido como La Ciudadela.
2. El Fideicomiso Salim M. Merheb Bistani, es el titular del apartamento 1521 del Condominio Torre Antonsanti 1500 del Complejo La Ciudadela.
3. El Fideicomiso fue constituido para beneficio de Salim Miguel Merheb Bistani, mediante escritura pública ante el Notario Eduardo R. Guzmán Valiente el 28 de octubre de 2019 y de la cual la Sra. Mariem Bistani Rodríguez consta como fiduciaria de este.
4. El Condominio Torre Antonsanti 1500 es parte del proyecto denominado La Ciudadela que consta de 15 Condominios Residenciales ubicados entre la Avenida Ponce de León y la Calle Antonsanti en el municipio de San Juan. El condominio está sujeto al Régimen de Propiedad Horizontal, según surge de la Escritura Núm. 324, otorgada el 18 de agosto de 2008 por la Notaria Pública Vanessa López Ortiz.
5. La parte demandada ha realizado un cambio de fachada en el balcón de su propiedad colocando unas ventanas y cerrando el balcón en su totalidad.
6. El Sr. Merheb solicitó un endoso del Fideicomiso de La Ciudadela y del Comité de Arquitectura para realizar un cambio de fachada al balcón del condominio en donde residía.
7. El 29 de agosto de 2019, el Fideicomiso de la Ciudadela le envió un comunicado al Sr. Merheb emitiendo un endoso favorable a su propuesta de construcción de cerrar el balcón del apartamento 1521, condicionado a cumplir con una serie de requisitos adicionales que incluían: (1) [l]a aprobación unánime de los 15 edificios de la Ciudadela y del Titular de Plaza de la Ciudadela, Putnam LAC Holding, Inc.; (2) contar con la

---

[13] *Id.,* a la pág. 10.
[14] *Id.,* a las págs. 4-10.

aprobación escrita del Titular de la Unidad; (3) la construcción no podía apartarse a lo establecido en el dibujo esquemático presentado; y (4) debía cumplir con los permisos gubernamentales necesarios para realizar la construcción.

8. El 6 de abril de 2021, el Fideicomiso de la Ciudadela le envió un comunicado al Sr. Merheb notificándole que conocen de la instalación de ventanas que cierran el balcón del apartamento 1521 y que la misma se realizó sin haberse completado el proceso de aprobación que establece el Artículo 10 de la Escritura 324.

9. La comunicación incluía una solicitud para que se devuelva a su estado original el balcón en un periodo de cinco (5) días, que al carecer de standing por no ser el titular de la propiedad deberá registrar la propiedad a su nombre u obtener un poder que le confiera la autoridad para tramitar la solicitud de permiso, y que luego de esos procesos se procederá con la votación de las Torres.

10. El 4 de junio de 2021, el Fideicomiso de la Ciudadela le envió un comunicado al Sr. Merheb en el que se le informó la denegatoria del Permiso de Construcción solicitado por motivos de que en cuatro (4) de las cinco (5) asambleas celebradas hasta ese momento su petición había sido rechazada incumpliendo así con el requisito de unanimidad.

11. Se le solicitó devolver la fachada a su estado original.[15]

El foro primario concluyó que la parte apelante demostró que, desde el momento de la solicitud de endoso hasta la última comunicación escrita enviada por el Fideicomiso La Ciudadela, había sido incapaz de cumplir con los requisitos establecidos tanto en la Ley de Condominios[16] como en las Escrituras 324 y 325 del Condominio.[17] También concluyó que no le asistía la razón a la parte apelante al argumentar que nunca tuvo forma de cuestionar el procedimiento llevado a cabo, arguyendo que no existía un proceso adecuado.

El foro primario concluyó, además, que la Escritura 324 sobre Ratificación de Concesión de Derecho de Superficie, en su artículo 10 sobre modificaciones al diseño arquitectónico establecía de forma clara los requisitos que debía seguir un titular de interesar realizar

---

[15] *Id.,* a las págs. 4-6.
[16] 31 LPRA sec. 1921, *et seq.*
[17] Apéndice de la parte apelante, a la pág. 9.

una modificación a la fachada de su propiedad.[18]  Abundó que el artículo 39(5) de la Ley de Condominios[19] disponía que, para cambiar la forma externa de la fachada, se requería el consentimiento de los titulares y que cuando se sometía una propuesta sobre el particular, se requería que pasara por la votación del Consejo de Titulares.[20]

Por último, el foro primario determinó que, si la parte apelante no estaba de acuerdo con la forma en que el Consejo de Titulares y el Fideicomiso La Ciudadela manejaron la situación, debió haber instado una querella en el Departamento de Asuntos del Consumidor (DACo), quien tenía jurisdicción exclusiva para atender los reclamos de titulares de condominios residenciales.[21]

De ahí, el 23 de febrero de 2022, la parte apelante presentó una *Solicitud de Reconsideración y/o Determinaciones Adicionales de Hecho y Derecho.*[22] En respuesta, mediante *Resolución* emitida y notificada el 24 de febrero de 2022, el foro primario denegó la solicitud presentada por la parte apelante[23].

Inconforme aún, el 28 de marzo de 2022, compareció la parte apelante mediante un recurso de *Apelación,* mediante el cual esgrimió la comisión de dos (2) errores por el foro primario, a saber:

> PRIMER ERROR: Erró el Tribunal de Primera Instancia al conceder un *Injunction* permanente luego de convocar y celebrar una vista de Injunction preliminar en la cual no se presentó prueba en la que procediera la concesión del tal remedio.

> SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al no considerar la prueba desfilada en cuanto a las circunstancias que ameritan el análisis de la viabilidad de las condiciones restrictivas aplicables a la Torre 1500.

---

[18] *Id.,* a la pág. 10.
[19] 31 LPRA sec. 1921, *et seq.*
[20] Apéndice de la parte apelante, a la pág. 10.
[21] *Id.,* a la pág. 10.
[22] *Id.,* a las págs. 11-27.
[23] *Véase*, entrada Núm. 41 del Sistema Unificado de Manejo y Administración de Caso (SUMAC).

Tras varios incidentes procesales, el 31 de agosto de 2022, la parte apelante *presentó Alegato Suplementario al Amparo de la Regla 21*. Finalmente, el 5 de diciembre de 2022, la parte apelada presentó una *Oposición a Apelación*. Quedando el caso perfeccionado para su adjudicación, procedemos a resolver.

II

## A. Recurso de Apelación

La Regla 52.2(a) de Procedimiento Civil[24], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[25] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[26] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.

> En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios y funcionarias, o una de sus instrumentalidades que no fuere una corporación pública, o en que los Municipios de Puerto Rico o sus funcionarios y funcionarias sean parte en un pleito, el recurso de apelación se formalizará, por cualquier parte en el pleito que haya sido perjudicada por la sentencia, presentando un escrito de apelación dentro del término jurisdiccional de sesenta días, contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado. [27]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación

---

[24] 32 LPRA Ap. V, R. 52.2 (a).
[25] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000). *Arriaga v. FSE*, 145 DPR 122, 131 (1998). *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[26] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[27] 4 LPRA Ap. XXII-B, R. 13 (A).

oportuna de una moción de reconsideración fundamentada.[28] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la notificación de la resolución que resuelve la moción.[29] Esto, a pesar de que se haya declarado la moción No Ha Lugar.

### B. Interdicto Preliminar y Permanente

El recurso de *injunction* o interdicto es un remedio extraordinario discrecional que procura la expedición de un mandamiento judicial que le exige a una persona a actuar o le prohíbe realizar determinada conducta que infringe o perjudica derechos de otra.[30] Dicho de otra manera, se trata de un remedio que busca prohibir u ordenar la ejecución de determinado acto, con el fin de evitar que se causen perjuicios inminentes o daños irreparables a alguna persona, en casos en los que no hay otro remedio adecuado en ley.[31]

La regulación del *injunction* descansa principalmente en la Regla 57 de las Reglas de Procedimiento Civil.[32] y en los artículos 675 a 687 del Código de Enjuiciamiento Civil, respectivamente.[33] Toda vez que se trata de un recurso extraordinario, los tribunales pueden expedir un *injunction* únicamente en aquellos casos en los que no hay otro remedio adecuado en el curso ordinario de la ley.[34]

La Regla 57 de Procedimiento Civil establece tres modalidades de *injunction*, a saber, el *injunction* permanente, el *injunction* preliminar y el entredicho provisional.[35] **El *injunction* permanente requiere la celebración de vista y que, luego del juicio en sus méritos y antes de ordenar el *injunction* permanente, el TPI**

---

[28] 32 LPRA Ap. V, R. 47.
[29] *Id.*
[30] Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA § 3521. Véase, además, *E.L.A. v. Asoc. de Auditores*, 147 DPR 669, 679 (1999).
[31] *VDE Corporation v. F & R Contractors*, 180 DPR 21, 40 (2010).
[32] 32 LPRA Ap. V, R. 57.
[33] 32 LPRA § 3421-3533.
[34] *E.L.A. v. Asoc. de Auditores, supra.*
[35] 32 LPRA Ap. V, R. 57.1; 32 LPRA Ap. V, R. 57.2. Véase también, *Next Step Medical v.* Bromedicon, 190 DPR 474, 486 (2014).

**debe considerar (i) si el demandante ha prevalecido en un juicio en sus méritos; (ii) si el demandante posee algún remedio adecuado en ley; (iii) el interés público involucrado y, (iv) el balance de equidades.**[36] (Énfasis suplido).

Sobre este remedio, el Tribunal Supremo ha expresado que se debe conceder el *injunction* si la parte que lo solicita demuestra que no tiene ningún otro remedio en ley para evitar un daño:

> Procede un *injunction* para evitar daños irreparables o una multiplicidad de procedimientos. [Citas omitidas.] El concepto de evitación de daños irreparables o de una multiplicidad de procedimientos constituye un aspecto de la regla básica de que procede un *injunction* cuando el remedio existente en el curso ordinario de la ley es inadecuado.[37]

En adición, el máximo foro ha establecido que para determinar si en un caso procede el recurso extraordinario de *injunction*, debe existir un agravio de patente intensidad al derecho de la persona que reclame urgente reparación para que se emita un *injunction*.[38] Asimismo, la parte promovente deberá demostrar que de no concederse el *injunction*, sufriría un daño irreparable.[39]

El *injunction* preliminar, por su parte, se emite en cualquier momento antes del juicio en su fondo.[40] Este remedio tiene como propósito fundamental conservar el *status quo* hasta que se celebre el juicio en sus méritos.[41] De esta manera, la orden del interdicto preliminar evita que la conducta del demandado produzca una situación que convierta la sentencia que finalmente se dicte en

---

[36] David Rivé, *Recursos Extraordinarios*, 2da Edición Revisada, Programa de Educación Jurídica Continuada, Facultad de Derecho Universidad Interamericana de Puerto Rico, 1996, San Juan, PR, págs. 44-45.
[37] *Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 367 (2001).
[38] *Com. Pro. Perm. de la Bda. Morales v. Alcalde*, 158 DPR 195, 205 (2002).
[39] *Misión Industrial v. Junta Planificación*, 142 DPR 656, 681 (1997).
[40] David Rivé, *Recursos Extraordinarios*, 2da Edición Revisada, Programa de Educación Jurídica Continuada, Facultad de Derecho Universidad Interamericana de Puerto Rico, 1996, San Juan, PR, a la pág. 21.
[41] *Mun. de Ponce v. Gobernador*, 136 DPR 776, 784 (1994).

académica, o que se le ocasionen daños de mayor consideración al peticionario mientras se ventila el litigio.[42]

Para determinar si procede o no conceder un *injunction* preliminar, se deben tomar en cuenta los siguientes criterios:

(1) La naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction*;

(2) Su irreparabilidad o la existencia de un remedio adecuado en ley;

(3) La probabilidad de que el promovente prevalezca eventualmente al resolverse el litigio en su fondo;

(4) La probabilidad de que la causa se torne académica de no concederse el *injunction*, y

(5) El posible impacto sobre el interés público del remedio que se solicita.[43]

A la par, deben considerarse los criterios de la Regla 57.3 de Procedimiento Civil[44], los cuales incorporan a estos criterios ya mencionados, el criterio de diligencia y la buena fe con la que ha obrado la parte peticionaria.[45]

El Tribunal Supremo ha reconocido que, a pesar de que el cuarto criterio es el más importante, el mismo está vinculado con el segundo criterio: la irreparabilidad de los daños o la existencia de un remedio adecuado en ley.[46] De conformidad, al aplicar los criterios antes enumerados, se ha reiterado que la concesión o la denegatoria de un *injunction* exige que la parte que lo solicita demuestre que no existe un remedio adecuado en ley.[47] En adición, nuestro más alto foro ha reiterado la necesidad de que la parte promovente demuestre la existencia de un daño irreparable "que no

---

[42] *Id.*

[43] *VDE Corporation v. F & R Contractors, supra*, en las págs. 40-41; *Rullán v. Fas Alzamora*, 166 DPR 742, 764 (2006).

[44] 32 LPRA Ap. V., R. 57.3.

[45] *Next Setp Medical v. Bromedicon et al., supra*, en la pág. 487.

[46] *VDE Corporation v. F & R Contractors, supra*, en la pág. 41; *Rullán v. Fas Alzamora, supra.*

[47] *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ.,* 173 DPR 304, 319 (2008); *Misión Ind. P.R. v. J.P. y A.A.A., supra.*

puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles."[48]

Ahora bien, corresponde puntualizar que la concesión de un *injunction* preliminar o entredicho provisional descansa en la sana discreción del Tribunal. Por ende, la decisión que tome el foro primario no debe ser revocada por este Tribunal Apelativo a menos que se demuestre que el TPI abusó de su facultad discrecional.[49]

Cabe destacar que,

**antes o después de comenzada la vista para considerar una solicitud de *injunction* preliminar, el tribunal podrá ordenar que el juicio en sus méritos se consolide con dicha vista. Aun cuando no se ordene la consolidación, cualquier evidencia que sea admitida en la vista sobre la solicitud de *injunction* preliminar y que sea admisible en el juicio en sus méritos, pasará a formar parte del expediente del caso y no tendrá que presentarse nuevamente el día del juicio**. (Énfasis suplido). El tribunal, al emitir su resolución, dictará inmediatamente una orden, especificando los hechos que ha determinado como probados en dicha etapa y ordenando los procedimientos ulteriores que sean justos en el pleito.[50]

En lo pertinente, el Artículo 677 del Código de Enjuiciamiento Civil dispone que las razones por las cuales se puede conceder un injunction. Entre ellas, cuando la obligación naciere de un fideicomiso[51].

**C. Ley de Condominios**

La Ley Núm. 129 de 16 de agosto de 2020, conocida como la *Ley de Condominios de Puerto Rico,* según enmendada, (en adelante, Ley de Condominios)[52], en su exposición de motivos expresa que: "Sobre los Consejos de Titulares, establece que los mismos son la autoridad suprema sobre la administración del

---

[48] *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ. supra,* citando a *Misión Ind. P.R. v. J.P. y A.A.A., supra; Com. Pro. Perm. Bda. Morales v. Alcalde, supra.*
[49] *E.L.A. v. Asoc. de Auditores, supra,* en la pág. 680; *Delgado v. Cruz,* 27 DPR 877, 880 (1919).
[50] 32 LPRA Ap. V, R. 57.2 (b).
[51] 32 LPRA sec. 3423.
[52] 31 LPRA sec. 1921 *et seq.*

inmueble sometido al Régimen de Propiedad Horizontal".[53] Asimismo, el Artículo 2 dispone que: "el titular de un apartamento sometido al Régimen de Propiedad Horizontal tiene el derecho al pleno disfrute de su apartamento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades".[54]

El artículo 39 de la Ley de Condominios establece las reglas a las cuales estará sujeto el apartamento que se encuentra bajo el Régimen de Propiedad Horizontal. A esos efectos, el inciso (b)(1) de dicho artículo expresa que, **cada apartamento se dedicará al uso dispuesto en la escritura matriz.**[55] (Énfasis nuestro). A su vez, el inciso (b) expresa quien infrinja los principios del Artículo 39,

> dará lugar al ejercicio de la acción de daños y perjuicios por aquel titular u ocupante que resulte afectado, además de cualquier otra acción que corresponda en derecho, **incluidos los interdictos**, las dispuestas en la Ley Núm. 140 de 23 de julio de 1974, según enmendada, conocida como, "Ley Sobre Controversias y Estados Provisionales de Derecho", y cualquier otro remedio en equidad. **La Junta de Directores queda expresamente autorizada a presentar acciones interdictales a nombre del Consejo de Titulares contra aquellos que cometan infracciones a las reglas establecidas en esta Ley.**[56] (Énfasis suplido).

Cónsono con lo anterior, el Artículo 39 inciso (5) impone una serie de restricciones a los titulares u ocupantes de un apartamento con relación a los cambios permitidos en la parte externa de la fachada[57] del condominio, entre ellas:

> **Ningún titular u ocupante podrá, sin el consentimiento de dos terceras partes (2/3) de los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes, cambiar la forma externa de la fachada,** ni decorar o cambiar las paredes, puertas o ventanas exteriores con

---

[53] Nueva Ley de Condominios de Puerto Rico, Ley Núm. 129 de 16 de agosto de 2020, Exposición de Motivos.
[54] 31 LPRA sec. 1921a.
[55] 31 LPRA sec. 1922k.
[56] *Id.*
[57] 31 LPRA sec. 1921b. El Artículo 3, inciso (o) de la Ley de Condominios define fachada como: "el diseño del conjunto arquitectónico de los elementos comunes y estético exterior del edificio, según se desprende de los documentos constitutivos de condominio".

diseños, colores o tonalidades distintas a las del conjunto. Cuando una propuesta de cambio de la forma externa de la fachada, decoración de las paredes, puertas o ventanas exteriores con colores o tonalidades distintas a las del conjunto, sea sometida a votación del Consejo de Titulares será suficiente la aprobación de por lo menos dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes. Las disposiciones bajo este subinciso con relación al número de votos requeridos, no se aplicarán a los inmuebles sometidos al Régimen de Propiedad Horizontal, previo a la aprobación de esta Ley, los cuales sólo se podrán modificar por unanimidad de los titulares.[58]

Consecuentemente, el Artículo 45 de la Ley de Condominios prohíbe la construcción de nuevas u obras adicionales sin el consentimiento del Consejo de Titulares. En específico, dispone que:

**"Ningún titular podrá, sin el consentimiento de dos terceras partes (2/3) de todos los titulares, que, a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes, y sin contar con los permisos correspondientes de las agencias pertinentes, cambiar conjunto arquitectónico y la fachada".**[59] (Énfasis suplido).

Por último, el Artículo 65 de la Ley de Condominios provee mecanismos para impugnar las acciones u omisiones de la Junta de Directores, Administrador Interino y los acuerdos y determinaciones de la Junta de Titulares. Las impugnaciones pueden realizarse cuando: a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio; b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular; c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.[60]

---

[58] 31 LPRA sec. 1922k.
[59] 31 LPRA sec. 1922q.
[60] 31 LPRA sec. 1923j.

**D. Las servidumbres en equidad (Ahora, restricciones voluntarias sobre fincas)**[61]

Las servidumbres en equidad, conocidas en el nuevo Código Civil de 2020 como restricciones voluntarias sobre fincas, consisten en unas restricciones y condiciones, constituidas unilateralmente por el urbanizador, que limitan el uso de terrenos y edificaciones, operan para beneficio de los presentes y futuros propietarios, e imponen cargas o gravámenes especiales, como parte de un plan general para el desarrollo y la preservación de una urbanización residencial.[62] Es menester destacar que, bajo el Código Civil de 2020 dichas restricciones voluntarias se pueden constituir de dos (2) modos: "(a) por negocio jurídico bilateral o multilateral celebrado por todos los propietarios de las fincas afectadas; o (b) por negocio jurídico unilateral del propietario de la finca afectada".[63] Estas restricciones, conocidas también como condiciones restrictivas, **limitan las facultades de los futuros adquirentes**, **de los solares y de las viviendas en cuanto a hacer obras nuevas, efectuar cambios en las ya hechas y delimitar los usos a los que puede ser destinada una propiedad.**[64] (Énfasis suplido). Luego de reconocida la validez y vigencia de las condiciones restrictivas, los tribunales estamos llamados a hacer cumplir a cabalidad los propósitos del contrato y, para así, preservar la autonomía de la voluntad de las partes.[65]

---

[61] *Asociación Playa Húcares v. Rodríguez*, 167 DPR 255 (2006). Este caso fue resuelto por el Tribunal Supremo de Puerto Rico previo a la entrada en vigor del Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Previamente, la figura de las servidumbres en equidad era una figura jurisprudencial.

[62] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 327 (2021). *Asociación Playa Húcares v. Rodríguez, Id.*, 262-263. *Residentes Parkville v. Díaz*, 159 DPR 374, 382-383 (2003). *Asoc. V. Villa Caparra v. Iglesia Católica*, 117 DPR 346, 351-353 (1986).

[63] CÓD. CIV. PR Art. 815, 31 LPRA sec. 8083.

[64] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC, supra*, 326. *Asociación Playa Húcares v. Rodríguez, supra*, 263. *Residentes Parkville v. Díaz, supra*, 384. *Sands v. Ext. Sagrado Corazón, Inc.*, 103 DPR 826, 827 (1975).

[65] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC, Id.*, 328-329. *Asociación Playa Húcares v. Rodríguez, Id.*, 264. *Residentes Parkville v. Díaz, Id.*, 385.

Cónsono con lo anterior, las restricciones adquieren un rango de contratos privados de naturaleza real, ya que una vez son inscritas en el Registro de la Propiedad, constituyen derechos reales **oponibles *erga omnes***, (énfasis suplido), que crean entre los predios afectados una relación de servidumbres recíprocas, puesto que cada lote o solar es predio dominante, a la vez que sirviente, con relación a los demás lotes o solares de la urbanización.[66]

### E. Apreciación de la Prueba, Deferencia Judicial y Discreción Judicial

Como es sabido, el ejercicio discrecional de la apreciación de la prueba que ejerce el TPI y las determinaciones que realiza están revestidas de confiabilidad y merecen respeto y deferencia.[67] Por ello, la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es este quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[68] Por su parte, un foro apelativo cuenta solamente con "récords mudos e inexpresivos", por lo que se le debe respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[69] En ese sentido, y como regla general, no debemos intervenir con las determinaciones que este haya efectuado en virtud de la presunción de corrección de la que gozan.[70]

En vista de lo anterior, nuestro máximo foro ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error

---

[66] *Asociación Playa Húcares v. Rodríguez, Id. Residentes Parkville v. Díaz, Id. Asoc. V. Villa Caparra v. Iglesia Católica*, *supra*, 353.

[67] *Pueblo v. Pérez Nuñez*, 208 DPR 511, 514 (2022). *Argüello v. Argüello*, 155 DPR 62, 79 (2001) citando a *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987). *Trinidad v. Chade*, 153 DPR 280, 289 (2001).

[68] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013). *Pueblo v. Santiago*, 176 DPR 133, 148 (2009). *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).

[69] *Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009). *Trinidad v. Chade, supra*, 291.

[70] *Pueblo v. Pérez Nuñez, supra*, 529.

manifiesto, o cuando un análisis integral de la prueba así lo justifique.[71] El Alto Foro ha determinado que un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.[72] En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[73]

Con relación al error manifiesto, un juzgador incurre en este cuando de un análisis de la totalidad de la evidencia, este Tribunal queda convencido de que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.[74] Por tanto, debe existir base suficiente en la prueba admitida que apoye la determinación del foro.[75]

De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble; de lo contrario, el

---

[71] *Pueblo v. Calderón Álvarez,* 140 DPR 627, 644 (1996). *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994). *Rivera Pérez v. Cruz Corchado,* 119 DPR 8, 14 (1987). S*ierra v. Tribunal Superior,* 81 DPR 554, 572 (1959).
[72] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).
[73] *González Hernández v. González Hernández,* 181 DPR 746, 776 (2011). *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 811 (2009). *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000). *Pueblo v. Irizarry,* 156 DPR 780, 789 (2002). *Pueblo v. Maisonave,* 129 DPR 49, 62-63 (1991).
[74] *Dávila Nieves v. Meléndez Marín, supra,* 772.
[75] *Pueblo v. Toro Martínez,* 200 DPR 834, 859 (2018). *Pueblo v. Irizarry, supra.*

tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos.[76]

Ahora bien, cabe destacar que el Tribunal Supremo ha resuelto que, en instancias en que las conclusiones de hecho que realice el TPI estén basadas en prueba pericial o documental, un tribunal revisor estará en la misma posición que el tribunal *a quo*.[77] Por tanto, ante dichas instancias, este tribunal apelativo "tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta".[78]

A esos efectos, aunque no está exenta de la posibilidad de toda revisión, si la actuación del tribunal a *quo* no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso.[79] Los foros apelativos podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[80]

Las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[81] Un tribunal de justicia incurre en un abuso de discreción: (i) cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran

---

[76] *Santiago Ortiz v. Real Legacy et al.*, *supra*. *Pueblo v. Arlequín Vélez,* 204 DPR 117, 148 (2020). *Pueblo v. Martínez Landrón*, 202 DPR 409, 424 (2019) citando a *Pueblo v. Maisonave*, *supra*, 63. *González Hernández v. González Hernández*, *supra*, 777. *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2009). *Pueblo v. Irizarry*, *supra*. *Pueblo v. Acevedo Estrada*, *supra*.

[77] *González Hernández v. González* Hernández, *Id. Sepúlveda v. Depto. de Salud*, 145 DPR 560, 573 (1998).

[78] *González Hernández v. González* Hernández, *Id. Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 363 (2001). *Prieto v. Mary land Casualty Co.*, 98 DPR 594, 623 (1970).

[79] S*ierra v. Tribunal Superior*, *supra*.

[80] *Pueblo v. Pérez Núñez*, *supra*.

[81] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013). *Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009).*

peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o, (iii) cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[82]

A su vez, es una norma bien establecida de nuestro sistema de justicia que la discreción judicial permea la evaluación de la evidencia presentada en los casos y controversias.[83] No obstante, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal revisor.[84] A esos efectos, conviene destacar que, la intervención del foro apelativo con la prueba desfilada tiene que estar basada en un análisis independiente y no a base de los hechos que exponen las partes.[85]

### III

Luego de examinar la totalidad del expediente, los escritos de las partes y la transcripción de la vista objeto de la Sentencia apelada, resolvemos.

La parte apelante nos solicita que revoquemos la Sentencia emitida el 7 de febrero de 2022 y notificada el 8 de febrero de 2022. En síntesis, argumenta que erró el foro primario al conceder un injunction permanente luego de convocar y celebrar una vista de injunction preliminar en la cual no se presentó prueba que justificara la concesión de tal remedio. Asimismo, plantea que cometió error el foro primario al no considerar la prueba desfilada con relación a las circunstancias que ameritaban el análisis de las condiciones restrictivas aplicables a la Torre 1500. Por estar estrechamente relacionados entre sí, discutiremos los señalamientos de error en conjunto.

---

[82] *Pueblo v. Rivera Santiago, supra.*
[83] *González Hernández v. González Hernández, supra,* 776.
[84] *Rivera Pérez v. Cruz Corchado, supra.*
[85] *Hernández v. San Lorenzo Const.,* 153 DPR 405, 425 (2001).

Del expediente ante nuestra consideración surge que, la Escritura 324 sobre Constitución de Fideicomiso para los Condominios de la Ciudadela y el Artículo Nueve (9) de la Escritura 324 sobre Ratificación de Constitución de Derecho de Superficie, de Constitución de Condiciones Restrictivas y Servidumbres Reciprocas, dispone que la fachada no podrá alterarse sin el consentimiento de todos los titulares del condominio, y con el consentimiento del titular o titulares de la propiedad concedente de "Plaza de la Ciudadela". Por su parte, el Artículo diez (10) de dicha Escritura establece que cualquier modificación al diseño exterior de cualquiera de los quince (15) condominios deberá someterse con anterioridad al Comité Arquitectónico. Por último, enfatiza que no se realizará cambio alguno de la fachada, incluida la combinación de colores de los edificios, que no cuente con el consentimiento unánime de los Consejos de Titulares.

Nótese que, desde que la parte apelante solicitó el endoso para realizar la construcción, el Fideicomiso lo expidió, sujeto a los siguientes requisitos: la construcción debía realizarse con la aprobación unánime de los quince (15) edificios; la construcción no podía apartarse del dibujo esquemático, y de así hacerlo, debía ser restablecido a su estado original y; obtener los permisos gubernamentales necesarios para llevar a cabo la construcción.

Cónsono con lo anterior, el Artículo 39 de la Ley de Condominios establece que cada apartamento se dedicará al uso dispuesto en la escritura matriz. A su vez, expresa que la Junta de Directores está expresamente autorizada a presentar acciones interdictales a nombre del Consejo de Titulares contra aquellos que cometan infracciones a las reglas establecidas en dicha Ley. En apoyo a lo anterior, el Artículo 677 del Código de Enjuiciamiento Civil establece que se puede conceder un injunction cuando la obligación naciere de un fideicomiso.

A esos efectos, la Regla 57.2 (b) de las de Procedimiento Civil permite consolidar la vista de injunction preliminar con la vista de injunction permanente. El texto de dicha regla es claro, el tribunal tiene discreción para ordenar la consolidación de la vista de interdicto preliminar con la vista del juicio en sus méritos. En el caso ante nos, la parte apelante solicitó una vista de interdicto preliminar. No obstante, el 28 de enero de 2022, el foro primario una celebró una vista de injunction preliminar y permanente conforme a la Regla 57.2 (b) de las de Procedimiento Civil. En dicha vista, el foro primario recibió prueba documental y testifical de las partes del título. Así pues, no erró el foro primario al celebrar ambas vistas. Examinado el expediente en su totalidad, juzgamos que no abusó de su discreción el foro primario al atender la vista de forma consolidada.

Ahora bien, reconocemos que el foro primario puede conceder un injunction o interdicto cuando no existe otro remedio adecuado en ley, además, busca prohibir u ordenar la ejecución de determinado acto, con el fin de evitar que se causen perjuicios inminentes o daños irreparables a alguna persona. En lo pertinente, para conceder un injunction permanente se requiere la celebración de una vista para considerar ciertos factores.

Cabe destacar, que entre los criterios que se debe evaluar al celebrar una vista de injunction permanente, es si no existe otro remedio adecuado en ley. Por tanto, es forzoso concluir que el foro primario determinó correctamente que el remedio adecuado en ley era conceder el injunction permanente al Fideicomiso y, ordenar la devolución del balcón a su estado original. Colegimos, además, que el foro primario no cometió error y mucho menos abusó de discreción al conceder el interdicto permanente, debido a que la prueba a evaluar era la misma para ambas vistas. Es decir, conceder una vista de interdicto preliminar y, luego citar a las partes para

celebrar una vista de interdicto permanente, hubiese resultado en una dilación del proceso.

Nótese, además, que el señor Salim Merheb conocía que no podía alterar la fachada sin el consentimiento unánime del Consejo de Titulares, toda vez que anterior a instalar dichas ventanas le habían advertido que necesitaba el consentimiento unánime. Asimismo, la Escritura 234 y 235 establecía la prohibición de alterar dicha fachada sin el consentimiento de unánime del Consejo de Titulares. Así pues, por no quedar asuntos pendientes, procedía conceder el interdicto permanente.

El uso y destino de los apartamentos de la Torre 1500 se encuentran delimitados en la Escritura 324 sobre Ratificación de Constitución de Derecho de Superficie, de Constitución de Condiciones Restrictivas y Servidumbres Reciprocas. En específico, se advierte que la fachada de ambos complejos es un elemento compartido; y cualquier alteración de la fachada no podrá realizarse sin el consentimiento de todos los titulares de la propiedad superficiaria. Asimismo, el Artículo 39 de la Ley de Condominios establece que cada apartamento se dedicará al uso dispuesto en su escritura matriz.

Dicho artículo, demuestra que La Ciudadela tuvo la intención de restringir la potestad a cada titular para realizar cambios en las fachadas y dichas condiciones restrictivas estaban expresamente pactadas en la Escritura. Es decir, la prueba desfilada no nos colocó en posición de evaluar la viabilidad de las condiciones restrictivas de la Torre 1500. Por el contrario, sí se demostró la existencia de dichas condiciones restrictivas y su estricto cumplimiento. Así pues, y, por último, señalamos que en el Alto Foro estableció que las condiciones restrictivas, limitan las facultades de los futuros adquirentes, de los solares y de las viviendas en cuanto a hacer

obras nuevas, efectuar cambios en las ya hechas y delimitar los usos a los que puede ser destinada una propiedad.[86]

IV

Por los fundamentos que anteceden, **se *confirma*** la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[86] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC, supra* 326.